1 Erica J. Stutman (# 029664)
Carlie Tovrea (# 029709)
2 SNELL & WILMER L.L.P.
One Arizona Center
3 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
4 Telephone: 602.382.6000
E-Mail: estutman@swlaw.com
5        ctovrea@swlaw.com

6 Lucas Franklin (*applying for pro hac vice*)
JONES DAY
7 North Point
901 Lakeside Avenue
8 Cleveland, OH 44114
Telephone: (216) 586-3939
9 Facsimile: (216) 579-0212
E-mail: lfranklin@jonesday.com
10
*Attorneys for Plaintiff Kan-Di-Ki, LLC*
11 *d/b/a Diagnostic Laboratories*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| In re: | Case No. |
|---|---|
| ROBERT DAVID SUER,<br><br>Debtor.<br><br>_____<br><br>KAN-DI-KI, LLC, d/b/a DIAGNOSTIC LABORATORIES,<br><br>Plaintiff,<br>v.<br><br>ROBERT DAVID SUER,<br><br>Defendant. | **KAN-DI-KI, LLC D/B/A DIAGNOSTIC LABORATORIES' MOTION FOR AN ORDER TO SHOW CAUSE WHY DANIEL ALMBLADE SHOULD NOT BE HELD IN CONTEMPT AND TO COMPEL THE APPEARANCE OF DANIEL ALMBLADE AT A TELEPHONIC DEPOSITION**<br><br>**Related Case Pending:**<br>**United States Bankruptcy Court for the Central District of California, Santa Ana Division, Case No. 8:14-bk-10082-ES, Adv. No. 8:14-ap-01124-ES** |

Kan-Di-Ki, LLC d/b/a Diagnostic Laboratories ("DL") hereby submits its motion ("Motion") for issuance of an order (1) to show cause why Daniel Almblade ("Almblade") should not be held in contempt for his refusal to comply with a deposition subpoena ("Deposition Subpoena"), specifically, his refusal to answer numerous questions about relevant matters; (2) compelling Almblade's attendance at a telephonic deposition to

furnish testimony that he previously refused to provide; and (3) awarding fees and costs. This Motion is supported by the following Memorandum of Points and Authorities and the Declaration of Lucas Franklin, attached herewith as **Exhibit 1** ("Franklin Declaration").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Debtor-Defendant Robert David Suer ("Suer") is a debtor in a chapter 7 case pending before the Honorable Erithe A. Smith in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Bankruptcy Court"). The bankruptcy case is captioned *In re Suer*, No. 8:14-bk-108093-ES (Bankr. C.D. Cal.) (the "Bankruptcy Case"). Shortly after the Bankruptcy Case began, DL commenced an adversary proceeding (the "Adversary Proceeding"), which is captioned *In re Suer (Kan-Di-Ki, LLC, d/b/a/ Diagnostic Laboratories v. Suer)*, No. 8:14-ap-01124-ES (Bankr. C.D. Cal.). In the Adversary Proceeding, DL contends that debts owed by Suer to DL are non-dischargeable under sections 523(a)(6) and 727(A)(2)-(4) of Title 11 of the United States Code.[1]

Section 523(a)(6) provides that a discharge under the Code does not discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a). Thus, a key issue pertinent to DL's section 523(a) claims is whether Suer inflicted "willful and malicious injury" on DL. Evidence collected and presented in DL's action against Suer in a separate case in Delaware Chancery Court (further defined and described below) establishes that, for years, Suer has been engaged in a scheme to injure DL by, among other actions, deliberately sabotaging DL's customer relationships. DL has received a communication from Almblade's former employer showing that Almblade has conspired with Suer in connection with key parts of the ongoing scheme. Thus, DL issued the Deposition Subpoena and deposed Almblade in Phoenix, Arizona, in an attempt to discover the details of Suer's ongoing sabotage

---
[1] Unless otherwise specified, all section numbers refer to the United States Bankruptcy Code, codified at Title 11 of the U.S. Code.

scheme. However, at the deposition, Almblade refused to testify as to key evidence regarding these matters. On advice of counsel, Almblade refused to answer any questions related to conversations, events, or any other matters that occurred after February 19, 2014, even questions that sought information about Suer's malicious scheme. As the only basis for this refusal, Almblade's counsel cited to the Bankruptcy Court's unrelated discovery order requiring Suer to produce responsive documents to DL dated through February 19, 2014. (Order Granting Plaintiff's Motion to Compel Discovery *In re Suer (Kan-Di-Ki, LLC, d/b/a/ Diagnostic Laboratories v. Suer)*, No. 8:14-ap-01124-ES (Bankr. C.D. Cal. Feb. 1, 2016), ECF No. 91 ("Order Compelling Production" or "Order"), attached as **Exhibit I** to the Franklin Declaration.) But that Order dealt with wholly separate claims, issues, and evidence and had no applicability whatsoever to Almbalde's obligations to testify about his involvement in the ongoing sabotage scheme (which commenced long before Suer filed his chapter 7 petition and directly relates to the issue of malice under section 523(a)).

Because Almblade's refusal to testify violates the Deposition Subpoena, this Court should issue an order (1) to show cause why Almblade should not be held in contempt, (2) compelling Almblade to appear and answer questions at a telephonic deposition, and (3) awarding fees and costs.

## II. BACKGROUND

A. Historical Background Relevant to Suer's Malicious Scheme to Hurt DL

Suer formerly worked as a sales executive for DL or its predecessor. The relationship, which lasted for years—on and off—was contentious. Suer was terminated or relieved from his responsibilities on more than one occasion, and he frequently expressed feelings of bitterness and an intention to hurt DL by taking away customers. Although Suer had contracts with DL with restrictive covenants that prevented Suer from taking actions that would hurt DL's business, Suer disregarded them. *See generally* Memorandum Opinion of Delaware Chancery Court, July 22, 2015, at 6-18 (Memorandum Opinion, attached as **Exhibit A** to the Franklin Declaration.)

- - 3 - -

1   After Suer's contact with DL's employees and customers was terminated, Suer continued to be bound by contractual covenants not to compete, not to use or disclose confidential information, and not to interfere with DL's relationships, including its customer relationships. Through May 2012, DL continued to pay Suer a monthly sum. While still on DL's payroll, Suer again violated his restrictive covenants and began "consulting" for North American Health Care, Inc. ("North American"), a health care management company that managed many long term care facilities to which DL provided mobile diagnostic services ("North American Facilities"). In his work for North American, Suer unlawfully claimed that DL had overcharged the North American Facilities. Suer also improperly replaced DL with other vendors at the North American Facilities. In addition, he wrongfully used and disclosed DL's confidential business information.

When DL learned of Suer's activities, an attorney for DL emailed Suer and his attorney, advising Suer: "You should stand down from your current activities with DL's competitors and customers and comply in full with all applicable agreements to which you are a party with us." (*Id.* at 18.) Thereafter, Suer did not stand down. Instead, he persisted in his charges of overbilling, and helped persuade 27 North American Facilities to cancel their contracts with DL, costing DL millions of dollars of business.

On October 10, 2012, DL filed a complaint in the Chancery Court of Delaware (the "Delaware Action"), to enforce its covenants with Suer and to prevent him from further harming the company. After trial, the Delaware Chancery Court held that Suer breached his covenants not to compete with DL, covenants not to disclose DL's confidential information, and covenant not to interfere with DL's business and that DL was entitled to injunctive relief. (*Id*. at 83-84.)

B.  <u>Suer's Scheme to Use Discovery to Cause Additional Harm to DL's Customer Relationships, And Almblade's Role In It</u>

During the Delaware Action, Suer hatched a plan which, like his North American scheme, sought to harm DL's customer relationships with allegations of overbilling.

- - 4 - -

1  Specifically, Suer schemed to depose some of DL's important customers and show them
2  exhibits about Suer's work at North American in an attempt to disparage DL and harm
3  DL's business relationships. Suer enlisted Almblade as his accomplice in this malicious
4  scheme. DL eventually learned of the scheme from Almblade's former boss, Steve Olds,
5  who sent DL's in-house counsel an email that disclosed what Almblade told him about the
6  scheme. (Letter dated 10/1/14 from S. Olds to T. McCaffery, attached as **Exhibit B** to the
7  Franklin Declaration.) The scheme, which began pre-bankruptcy, unfolded as follows.

8  On July 2, 2013, more than six months before Suer declared bankruptcy, Suer
9  advised DL in the Delaware Action that he would be calling witnesses from six of DL's
10  largest customers, including a representative of Plum Healthcare ("Plum"). (Suer's
11  Supplemental Response to Interrogatory No. 1, dated 7/2/13, attached as **Exhibit C** to
12  Franklin Declaration). DL was suspicious, as these witnesses had nothing to do with DL's
13  claims against Suer and they had no knowledge that would have been relevant to DL's
14  claims. DL's lawyers spent considerable time and expense trying to understand Suer's
15  motivations and what possible relevant information these third parties might have.

16  On August 15, 2014, Suer deposed Almblade in the Delaware Action. At the time,
17  Almblade was employed by a company called LTC/Medliance ("Medliance"). Medliance
18  provides services to healthcare facilities, specifically, the evaluation of vendors' proposals
19  in response to requests for bids, and the adjudication of bills (including, for example,
20  negotiating reduced costs or itemized reductions to invoices). At the time of Almblade's
21  deposition, he (as part of his work for Medliance) was evaluating a major proposal DL had
22  submitted to Medliance in response to a request for proposal by DL's major customer,
23  Plum. As with the other third party witnesses that Suer previously identified, DL incurred
24  substantial time and expense trying to determine the purpose and prepare for the
25  deposition.

26  Almblade admitted at the deposition that he knew nothing about the dispute
27  between Suer and DL, and he further testified that Suer asked him to be deposed because
28  Almblade would find it "very informative." (Deposition Excerpts attached as **Exhibit D**

- - 5 - -

to Franklin Declaration; Almblade 69:19-70:5; 77:1-8.) In addition, in keeping with Suer's sabotage plan, Suer's counsel marked as an exhibit and showed Almblade a letter to DL from North American, accusing DL of overbilling. (*Id.* at 36:13.)[2]

On October 1, 2014, DL received the aforementioned email from Mr. Olds, the CEO of Medliance. (**Exhibit B** to the Franklin Declaration.) Mr. Olds explained, in relevant part:

> Approximately two months ago, Dan [Almblade] came into my office and told me that Bobby Suer had a scheme to put pressure on Diagnostic Labs in response to the litigation initiated by Diagnostic Labs. Dan wanted me to meet with Bobby Suer to work out an agreement whereby I would talk to other [skilled nursing facility] operators to put pressure on DL to back off of Bobby. [ . . . ] ***Dan explained that Suer was going to give questions to his attorneys to use during depositions to bring out the Diagnostic Labs overbilling practices and the appropriate auditing actions to find the overbilling. Dan [Almblade] implied that the agreement with Suer would be a win-win; Suer gets revenge on Diagnostic Labs*** and Medliance gets new business through Dan.

(*Id.* at 3 (emphasis added).)[3]

B. <u>Almblade's Deposition in the Adversary Proceeding</u>

Given Almblade's involvement in Suer's attempt to "get revenge" on DL, DL sought Almblade's deposition in the Adversary Proceeding. On February 9, 2016, Almblade was properly served with the Deposition Subpoena outside of his home in Scottsdale, Arizona, which is attached as **Exhibit E** to the Franklin Declaration. Notwithstanding correspondence between the parties in the three weeks leading up to Almblade's deposition, neither Suer nor Almblade[4] objected to the Deposition Subpoena.

---

[2] Thereafter, Almblade appeared in Delaware to testify on behalf of Suer and, within weeks, Almblade received a lucrative consulting contract with North American (according to filings in North American's Chapter 11 bankruptcy case).

[3] According to Olds, Suer first approached Almblade with the scheme, and then Almblade approached Olds. Olds refused to participate and informed DL once he learned that Almblade's deposition had been part of the scheme. (*Id.*)

[4] Notably, during Almblade's deposition, he admitted that Douglas Fuchs, counsel to North American (Suer's employer) had called him prior to his deposition and recommended counsel to represent Almblade. Almblade improperly refused to answer whether he was paying for his own counsel. It appears that Suer or North American may be footing the bill. Deposition Transcript 7:6-8:9; 31:19-33:7.

1 Nor did anyone seek a protective order or a file a motion to quash. Yet, in the eleventh
2 hour, the evening before the deposition and after DL's counsel was on a plane to Arizona
3 to take it, counsel for Almblade sent a letter to DL's counsel, which is attached as **Exhibit**
4 **F** to the Franklin Declaration, and provides in part:

> [I]t is my understanding that the bankruptcy petition was filed on January 7, 2014, and the judge limited certain document discovery to February 19, 2014 and prior. Thus, I will be very careful in allowing any questions related to conversations or events past the bankruptcy petition date.

At the outset of the deposition in Phoenix, Arizona, DL's counsel disagreed that the Order Compelling Production limited the deposition's scope. DL's counsel explained, "if you review the [Bankruptcy] Court's ruling, you would see that it has nothing to do with depositions" and "[d]epositions were never even discussed at the hearing on the motion to compel." Almblade Dep. 19:21-25, Mar. 1, 2016.[5] Moreover, DL's counsel informed Almblade that he would ask the necessary questions to establish a record, and, if Almblade refused to answer, DL reserved its rights to seek Court intervention. *Id.* at 19:8-16. Notwithstanding this warning, Almblade's counsel repeatedly objected to, and instructed Almblade not to answer, questions about the Suer-Almblade sabotage scheme described by Olds. Thus, the time and expense for DL's counsel to prepare for, travel to and attend the Almblade deposition were for naught.

C. Order Compelling Production

The parties have engaged in prior disputes relating to DL's requests for production of documents directed to Suer. To summarize, following a motion to compel, a joint stipulation, and hearing ("Hearing"), the Bankruptcy Court ordered Suer to produce all documents dated through February 19, 2014 that are responsive to certain of DL's requests. *See* Order Compelling Production, at ¶¶ 2-10, Exhibit I. As the Hearing transcript confirms, the time restrictions in the Order Compelling Production apply

---

[5] A copy of the transcript of Almblade's March 1, 2016 deposition is attached to the Franklin Declaration as **Exhibit G**.

- - 7 - -

1  primarily to DL's requests related to its *section 727(a)* claim, specifically because that

2  claim "refers to 'an intent to hinder, delay or defraud a creditor by disposing property

3  *within one year of the bankruptcy*,'" and Suer filed his bankruptcy petition on January 7,

4  2014.[6] Mot. Compel Hr'g Tr. 19:13-16, Jan. 5, 2016 (emphasis added).[7] *See also id.* at

5  19:4-6 (THE COURT: "I'm specifically talking about – because you referenced

6  727(a)(2)(a) . . . that's for a limited period for one year before [the petition date]. MS.

7  WIENER: Yes, your honor." ); *id.* at 24:15-18 ("THE COURT: And I'm sorry, this relates

8  to the 523(a)(6) claim? Which claim does this relate to? MS. WIENER: I think it relates

9  primarily to the 727, because it goes to his finances . . . .").

10  Indeed, the Bankruptcy Court acknowledged that, although document requests for

11  postpetition information might not be proper as to DL's section 727 claims, that was not

12  necessarily true of its section 523 claims. *See id.* at 16:22-16:25 ("THE COURT:  -- to the

13  extent that there were any [documents] . . . that took place post petition, they're not going

14  to be covered by 727, correct? MS. WIENER: That's correct, your honor.").

15  In contrast, here, the discovery sought from Almblade does not even remotely

16  relate to Suer's financial information for DL's *section 727(a)* claims. Rather, DL's

17  questions related only to malice and DL's *section 523(a)* claims, which do not implicate

18  either the Order Compelling Production or the timeframes enunciated therein. Thus,

19  because the time limitations in the Order Compelling Production do not govern

20  depositions or discovery related to DL's section 523 claims, Almblade was required to

21  provide full responses to DL's questions and failed to do so.

---

[6] For reasons not material to this motion, the Bankruptcy Court extended the relevant date for Suer to produce documents related to DL's section 727 claims through the section 341 meeting of creditors, which occurred on February 19, 2014.

[7] A copy of the transcript of the January 5, 2016 hearing on DL's motion to compel is attached to the Franklin Declaration as **Exhibit H**.

- - 8 - -

## III. ARGUMENT

### A. The Court Should Issue an Order to Show Cause Why Almblade Should Not Be Held in Contempt

The Federal Rules of Civil Procedure provide that "[t]he court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order relating to it." Fed. R. Civ. P. 45(g).

Here, Almblade failed to comply with the Deposition Subpoena by refusing to testify as to any events, conversations, or other matters occurring after February 19, 2014. No such limitation was placed on his deposition by any Bankruptcy Court order—including the Order Compelling Production—nor did the Deposition Subpoena itself contain any timeframe constraints. Moreover, Almblade's letter on the eve of the deposition did not properly limit the scope of the deposition, and he did not seek a protective order or move to quash the Deposition Subpoena. As the Ninth Circuit has held, a "nonparty served with a subpoena has three options: it may (1) comply with the subpoena, (2) serve an objection on the requesting party in accordance with Civil Rule 45(c)(2)(B), or (3) move to quash or modify the subpoena in accordance with Civil Rule 45(c)(3)." *In re Plise*, 506 B.R. 870, 878 (B.A.P. 9th Cir. 2014). Because Almblade did not comply with any of these three options, this Court should order him to show cause why he should not be held in contempt.

### B. The Court Should Compel Almblade to Appear for a Telephonic Deposition and Award DL Its Reasonable Fees and Costs

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). Such awards may include reasonable fees and expenses, including those incurred in filing a contempt motion and reply, preparing for and participating in a hearing on the motion, and conducting related depositions. *Bademyan v. Receivable*

- - 9 - -

*Mgmt. Servs. Corp.*, No. CV0800519MMMRZX, 2009 WL 605789, at *4 (C.D. Cal. Mar. 9, 2009) (citing cases). Furthermore, a court may compel appearance at a deposition as an additional remedy. *Id.* at *6 (awarding attorney's fees and compelling attendance at a subsequent deposition).

Here, DL respectfully requests that this Court award DL's reasonable and actual attorneys' fees and costs incurred in bringing and adjudicating the present motion and taking subsequent steps to obtain suitable deposition testimony from Almblade. *Donovan v. Burlington Northern, Inc.*, 781 F.2d 680, 682 (9th Cir. 1986) ("[C]ourts in civil contempt proceedings *must* award attorney's fees when such fees have actually been incurred by the prevailing party and are otherwise allowable."). Finally, DL respectfully requests that this Court order Almblade to appear at a second deposition by telephone in order to provide full answers to DL's questions, including those related to events, communications, and other matters occurring on or after February 19, 2014.

## IV. CONCLUSION

For the reasons set forth herein, DL respectfully requests that the Court issue an order (1) to show cause why Almblade should not be held in contempt for failure to comply with the Deposition Subpoena; (2) compelling Almblade's attendance at a telephonic deposition to provide further testimony consistent with the foregoing; and (3) awarding fees and costs. Attached hereto is a proposed form of order to show cause.

DATED this 8th day of April, 2016.

SNELL & WILMER L.L.P.


By: */s/Carlie Tovrea*
Erica J. Stutman (# 029664)
Carlie Tovrea (# 029709)
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

- - 10 - -

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing. Courtesy copies of the foregoing were sent by mail to:

Jerome Bennett Friedman
Michael Sobkowiak, Esq.
Friedman Law Group, P.C.
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
*Attorneys for Debtor/Defendant Suer*

James G. Bennett, Esq.
The Checkett Law Firm, PLLC
4835 East Cactus Road, Suite 345
Scottsdale, AZ 85254-35439
*Attorneys for Daniel Almblade*

Weneta M. Kosmala
3 MacArthur Place, Suite 760
Santa Ana, CA 92707
*Chapter 7 Trustee*

United States Trustee
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4593
*United States Trustee*

/s/Carlie Tovrea

23855505

- - 11 - -